UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMPHENOL CORPORATION, Plaintiff | : | Civil Action No. 3:12-cv-543 (AVC) |
| v. | : | (Electronically Filed) |
| RICHARD PAUL, Defendant. | : | |

## AFFIDAVIT OF MARIA MORGAN

STATE OF New York :
COUNTY OF Otsego : ss

I, Maria Morgan, being duly sworn according to law, do hereby depose and state as follows:

1. I am Group Director Human Resources for Aerospace & Industrial Operations Division, Amphenol Corporation and have been in this position since August 2006.

2. I was provided with certain Amphenol files that were recovered by Garry Pate, a computer forensic expert from Capsicum Group, from a hard drive and a thumb drive that were sent to our legal counsel by Rich Paul long after his resignation.

3. I first reviewed Amphenol files that were recovered from an "Imation" brand thumb drive. One of those files is titled "GA_2012_Tampa_rev9.ppt". This file is a copy of a PowerPoint presentation that Gary Anderson, Senior Vice President and Group General Manager of Aerospace & Industrial Operations Division, Amphenol Corporation, gave to a group of Amphenol Sales Engineers, Sales Managers, Product Marketing Managers and General

Managers for at 2012 Sales Meeting. The presentation contains specific group performance data and some very high level strategic focus slides. This file was NOT distributed to the meeting members due to the sensitive and highly confidential nature of its contents but was instead used only for visual presentation to the group.

4. The second group of documents that I reviewed came from a high capacity external hard drive called a "WD – My Passport" (the "Passport").

5. I was given 5,492 Amphenol files recovered from the Passport to review. These files were almost exclusively Amphenol work related Word documents, Excel spreadsheets, and PowerPoint presentations. The data and strategic information can be described simply as everything we run our business with. From what I saw, it appears that Rich Paul kept copies of many of the files he would have had on his work laptop.

6. The large volume of files recovered from the Passport drive are both historical and current and contain highly sensitive and protected documents and confidential proprietary information.

7. There are many files contained on this drive that would be very harmful to Amphenol if put in the hands of a competitor with someone like Rich Paul to interpret. The information concerns pricing, contracts, engineering development plans and much more.

8. The information ranges from monthly "operations packages" to full-year complete analysis of net orders and revenues including margins from 2009, 2010 and 2011 for the entire military aerospace business by customer and by product line for Original Equipment Manufacturers and for our Distribution Channels. This information comes from an internal program called "Looking Glass" and is maintained on our server. Looking Glass has many different options and uses many different levels of authorization for access to these options.

Rich Paul had full authority(due to his high level position) to see MAO orders, revenues, and margins and used his Company issued password to access the files on the server. These files list every MAO customer and describes down to a detailed level what products we sell to them, annual revenue generated on the goods sold to them, and the associated margins. This information would provide our competitors with a very clear roadmap to seek and take our business.

9. The "operations packages" show detailed sales, revenue, and margin performance by month, quarter, year to date, quarter over quarter, and year over year for the MAO business. It highlights our big ticket wins, losses, and push-out "go-gets" for the coming months. New products under development and new product strategies are reviewed monthly. Quality control issues are highlighted and reviewed and would present opportunities for competitors if put in their hands. Delivery issues are highlighted and reviewed and would also present opportunities for competitors.

10. There are three files on this drive that relate to a "highly confidential" acquisition target, including the file titled "secret.doc" which includes financial and other information obtained by Rich Paul as a representative of AAO while we considered the acquisition and operated pursuant to a signed Non-Disclosure Agreement.

11. Rich Paul also had a file named "Temprequest.doc" on the Passport. This file includes a spreadsheet detailing AAO's engineering development plans for copper and for fiber. It contains detailed information on target customers and programs, as well as projected revenues for 2012 and 2013.

12. The forensic investigation has revealed that Paul copied and retained the following confidential and secretive information of Amphenol: (1) confidential information on Amphenol's

customers, including: (a) lists containing customer contact information; (b) spreadsheets detailing customer purchases; (c) spreadsheet detailing customer/product margins and sales amounts; and (d) a spreadsheet detailing MAO sales and top 20 customer information; (2) confidential information on Amphenol's cable, fiber optic, and other products; (3) confidential information on the design, assembly, manufacture, and operation of developmental Amphenol products; and (4) an email attaching highly confidential documents regarding Amphenol's strategic response to the TE/Deutsch merger.

13. The forensic investigation has revealed that Rich Paul copied historical and updated copies of the POS Pivot database (which arguably contains Amphenol's most competitively sensitive information), with the majority of copying taking place on February 26, 2012, days before he resigned.

14. The forensic investigation has revealed that Paul accessed, reviewed, and retained confidential documents containing information on Amphenol's cable, fiber optic, and other products.

15. Paul accessed and retained a layout for a developmental product called the "Split Quadrex Modified 2M Shell." This information is highly confidential and proprietary, as it details how the product is designed and manufactured. If this information is openly disclosed in the market, or to a competitor such as TE, Amphenol's significant investment in the manufacture and design of this product may be lost. Rich Paul downloaded similar information for many other developmental or existing Amphenol products, all of which are highly confidential and proprietary.

16. Rich Paul also forwarded a January 4, 2012 email sent from a member of the team created by Amphenol to develop a strategic response to TE's acquisition of Deutsch. The email

attaches several highly secretive and competitively sensitive documents, which detail, among other things: (1) an analysis of the TE/Deutsch merger and its implications; (2) competitive market and business opportunities; and (3) customer specific information, including customer needs and potential sales opportunities.

17. In a TE document providing its Overview of its Global Aerospace, Defense, and Marine Business Unit (a document retrieved from Paul's files), TE states that, as of April 11, 2011 (one year before the Deutsch merger), 14% of its sales derived from connectors, while 26% came from wire and cable sales. A copy of the "TE Overview" is attached hereto as Exhibit O.

18. The TE Overview lists the various products sold by TE in a variety of military and aerospace markets. *See* Exhibit O, at 8-9. Amphenol sells many of these same products, thus making TE a direct competitor of Amphenol. Amphenol and TE sell the following products, among others, in the military and aerospace markets: high performance connectors, lightweight connectors, composite connectors, contactors and relays, high performance cables, 270V DC Power Contactors, 1553 Databus Interconnects, high-voltage contactors, ruggedized fiber optics, fiber optic products, and many other products. The customers and distributors for the cable and fiber optic products are the same as the customers and distributors for connector products.

All of the descriptions and the representations I have made in this Affidavit I believe are true, accurate and correct to the best of my knowledge and information. I stand ready to testify concerning these matters if and when called upon by the Court to do so.

Maria L Morgan

Maria Morgan

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, by Maria Morgan, who is personally known to me, who executed the foregoing in my presence and who did take an oath this 17 day of May, 2012.

Teri A Basdekis

Notary Public

My commission expires:

TERI ANN BASDEKIS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BA6224851
Qualified in Otsego County
My Commission Expires July 19, 2014



DM1\3327444.1