UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMPHENOL CORPORATION,<br>Plaintiff<br>v.<br>MR. RICHARD PAUL,<br>Defendant. | Civil Action No. 12-00543-AVC<br><br>**EMERGENCY RELIEF REQUESTED** |

**AFFIDAVIT OF JAMES J. HALLIGAN, ESQ.**

COMMONWEALTH OF PENNSYLVANIA :
: ss
COUNTY OF PHILADELPHIA :

I, James J. Halligan, Esq., being duly sworn according to law, do hereby depose and state as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania. I am an associate with the law firm of Duane Morris LLP, with an office located at 30 South 17th Street, Philadelphia, Pennsylvania 19103.

2. The facts stated in this Affidavit are within my personal knowledge and are true and correct; I could/would testify to them competently if called upon to do so.

3. I submit this Affidavit in support of the Emergency Motion for a Temporary Restraining Order filed by Plaintiff Amphenol Corporation.

4. On May 31, 2012, Amphenol served a Subpoena *Duces Tecum* ("May 31 Subpoena") upon third party TE Connectivity, Ltd. ("TE") seeking the production of documents and tangible things related to, among other things, the subject matter of this litigation,

information exchanged between TE and Defendant Richard Paul ("Paul"), meetings and negotiations held by TE with Paul, the recruitment and hiring of Paul, and the pricing, manufacture, distribution, or any other aspect of Amphenol's business, products, and services. The May 31 Subpoena commanded TE to produce documents on or before June 18, 2012 (a date which complies with Rule 45's notice and response requirements). A true and correct copy of the May 31 Subpoena is attached hereto as Exhibit A.

5. On June 14, 2012 (four days before the date commanding the production of documents and things under the May 31 Subpoena), I received an email from Brian Lee, Esq. of the law firm Ogletree Deakins. The June 14, 2012 email enclosed TE's objections and responses to the document requests contained in the May 31 Subpoena. In its objections and responses, TE stated that:

> TE objects to the Subpoena on the grounds that it does not provide a reasonable time frame to respond based on the volume of documentation requested and searches that need to be performed. TE submits that it should, at a minimum, be afforded the 30 day timeframe provided under FRCP 34 for a party's response to a request for the production of documents.
>
> * * *
>
> This is due, in part, to the fact that TE in-house counsel is overseas on business. Such documents generally consist of e-mails between Defendant Paul and TE in-house counsel Charles Post, Esq.

The responses and objections to the specific requests contain many boilerplate and repetitive objections. A true and correct copy of the June 14, 2012 email is attached hereto as Exhibit B.

6. On June 15, 2012, Attorney Lee sent me an email stating:

> TE is in the process of gathering documents, and I want to make sure we are in a position to get you responsive documents once the objections are worked through.

A true and correct copy of the June 15, 2012 email is attached hereto as Exhibit C.

7. In response, I sent Attorney Lee an email on June 15, 2012 that stated:

> While we are happy to discuss matters regarding the subpoena served on TE Connectivity, Ltd., any such discussion should not be construed as a waiver of the time for TE to comply with the subpoena's requirements or the timing for compliance (the subpoena commands production from your client on Monday June 18, 2012 at 10:00 a.m.).

A true and correct copy of the June 18, 2012 email from me to Attorney Lee is attached hereto as Exhibit D, at 2. On June 18, 2012, Attorney Lee sent me an email stating:

> As you saw in the objections, among other things, there are issues relating to the fact that there is no protective order entered and TE requires more time to gather the documents that have been requested. Thus, documents are not being produced today.
>
> On the protective order front, my understanding from Mr. Paul's attorney is that the parties to the lawsuit have been negotiating the terms of a protective order, which may address TE's confidentiality concerns depending on the final version entered by the court.

*Id.* at 1.

8. On June 20, 2012, I sent Attorney Lee the following email message: "Per our conversation yesterday, attached please find copies of the stipulated protective order and motion filed in the Amphenol v. Paul action. This protective order expressly applies to third parties." A true and correct copy of the June 20, 2012 email is attached hereto as Exhibit E. In response, Attorney Lee provided:

> I will review and discuss with TE. Please let me know when this is entered.
>
> I am scheduling a call with TE about the document gathering efforts and to address the concerns we discussed yesterday. I will update you on status tomorrow (unless I receive information before then).

*Id.*

9. On June 21, 2012, I sent Attorney Lee an email advising him that the Court entered the Stipulated Protective Order. A true and correct copy of the June 21, 2012 email is attached hereto as Exhibit F. In response, Attorney Lee stated:

> I have sent the order to my client for review, and have received a thumb drive with some documentation that I have forwarded to my litigation support team to load into our concordance system for review. I will be discussing the order, and the issues we discussed with my client tomorrow, and will call you to discuss.

*Id.*

10. On July 10, 2012, James L. Beausoleil, Esq. sent Attorney Lee an email stating the following: "Brian, Can you give me an update on TE's response to the subpoena? When can we expect a response?" A true and correct copy of the July 10, 2012 email is attached hereto as Exhibit G. Attorney Lee provided the following response later that day:

> I just returned from vacation today. I need to review the documents from the searches performed through our concordance software. I will give you an update no later than Tuesday morning, and then hopefully commit to a production date.

*Id.*

11. On July 12, 2012, Attorney Lee sent Attorneys Beausoleil and Halligan the following message:

> I am meeting with the associate who coordinated the e-mail search to determine what I need to review early this afternoon, and will e-mail you an update later today.

A true and correct copy of the July 12, 2012 email is attached hereto as Exhibit H.

12. On July 13, 2012, Attorney Lee sent Attorneys Beausoleil and Halligan the following message:

> I am aiming to get you our production by Friday July 20 after taking a look at what I need to review and follow-up on with the client. If I run into any issues I will let you know by mid-next

> week, but I will make every effort to get documents to you by the 20th.

A true and correct copy of the July 13, 2012 email is attached hereto as Exhibit I.

TE did not produce any documents to Amphenol on or before July 20, 2012, notwithstanding the above representation.

13. On July 20, 2012, Attorney Lee sent Attorney Beausoleil the following email message:

> In follow-up to my e-mail yesterday morning, it is going to have to be next week on the documents. I just got jammed up this week with a number of unexpected assignments. I confirmed Charlie [Post] is in next week, so I should be able to review the documents and get his thoughts without an issue. My apologies for this delay.

A true and correct copy of the July 20, 2012 email is attached hereto as Exhibit J, at 2. TE did not produce any documents to Amphenol on or before the end of the following week either, notwithstanding the above representation. Instead, on July 26, 2012, Attorney Lee sent Attorney Beausoleil an email stating : "I have gone through the e-mails in question, and am setting up a discussion with Charlie [Post] to discuss confidentiality issues. I will be back in touch tomorrow regarding status." *Id.*

14. In response to TE's repeated delays, I sent Attorney Lee the following message on August 1, 2012:

> Please advise as to the "confidentiality issues" identified below, as well as providing us with a firm date in which TE will make its production in response to the subpoena served upon it on May 31, 2012. As you are already aware, the Court entered a Confidentiality Order that extends to third parties (courtesy copies of the Order and the Court approval are attached). In light of the protections provided in the Confidentiality Order, concerns over confidentiality do not provide any basis for your client to further delay its making its production. Also, you previously represented that TE would make its production on July 20 (see below). That time has since come and gone, yet we have not received a single document from TE. You also advised us, via telephone, that TE

> would produce paper documents and electronic documents not affected by privilege or confidentiality issues. To date, we have not received documents from your client, notwithstanding the fact that TE is under a legal obligation to produce documents pursuant to the Court's subpoena power. We can no longer afford any more delays from TE and require your client to immediately comply with the May 31 subpoena.

*Id.* at 1.

15. On August 3, 2012, Attorney Lee sent counsel for Amphenol the following email message:

> I confirmed that I will be speaking with Charlie Post late Monday afternoon regarding e-mails that have been recovered and reviewed by my firm. Given that he was in Shanghai this week, I also need to discuss his schedule with him to determine timing of his review of documents that may be produced. As a result, I will give you an update on Tuesday as to where things stand in the hope we came up with a firm production date, and to discuss whether there are concerns on TE's part with the parameters of the confidentiality stipulation between the parties in your litigation.
>
> * * *
>
> [N]early all of the documents in TE's possession are confidential to one degree or another, however, I will review with Mr. Post whether there are certain documents that we can produce with no confidentiality concerns.

A true and correct copy of the August 3, 2012 email is attached hereto as Exhibit K.

16. On August 7, 2012, Attorney Lee sent counsel for Amphenol a follow-up message to his August 3, 2012 email, which stated:

> Just give me to tomorrow to have a more definitive response to your e-mail. …
>
> One thing we need to do is agree on a protective order between our clients. TE is not bound by the Order issued in the Paul matter, and, at a minimum, Charlie [Post] is not comfortable with Amphenol's in-house counsel having access to documents that would be marked as highly confidential/attorney's eyes only.

A true and correct copy of the August 7, 2012 email is attached hereto as Exhibit L. This was the first time that TE raised "concerns" that the protections of the Stipulated Protective Order did not extend to TE, notwithstanding the fact I advised Attorney Lee on numerous prior occasions that the Stipulated Protective Order has express protections for third parties. This is also the first time TE raised concerns over the inclusion of "in-house counsel" for documents marked "Attorneys' Eyes Only," notwithstanding the fact I first furnished Attorney Lee a copy of the Stipulated Protective Order on June 20, 2012 (thus making it 48 days between the time TE first received a copy of the Stipulated Protective Order and the time it raised the concern over "in-house counsel" having the ability to review documents).

17. From August 10 through August 16, 2012, TE and Amphenol negotiated and reached an agreement that Amphenol, Paul, and TE would file a consent motion with the Court requesting an amendment to the Stipulated Protective Order that would remove the ability of in-house counsel to review any document produced by TE that was marked "Attorneys' Eyes Only." Pursuant to this agreement, Attorney Lee sent me the following email message on August 10, 2012:

> The good news is, provided we can agree on the entry of a protective order, with the protections against in-house counsel viewing attorney's eyes only material, TE does not plan to engage in wholesale redactions of confidential information in documents that will be produced, which should speed the process of our production once the protective order is entered.

A true and correct copy of the August 10, 2012 email is attached hereto as Exhibit M.

18. On August 29, 2012, I sent Attorney Lee, via email, copies of subpoenas *ad testificandum* and *duces tecum* directed to Kevin Rock (TE's President) and Janet Russell (TE's Human Resources Director) requesting Attorney Lee to "advise as to whether [he] can accept service on behalf of Mr. Rock and Ms. Russell." A true and correct copy of the August 29, 2012

email is attached hereto as Exhibit N. On August 30, 2012, Attorney Lee responded: "I expect to have an answer to you no later than tomorrow. I will be discussing with Charlie Post later today or tomorrow morning depending on his schedule." *Id.* The subpoenas, as drafted, commanded Mr. Rock and Ms. Russell to attend depositions on September 20, 2012. True and correct copies of the subpoenas are attached hereto as Exhibit O.

19. On August 31, Attorney Lee sent counsel for Amphenol an email message that stated that he can accept service of the subpoenas directed to Mr. Rock and Ms. Russell "with two minor caveats": (1) that Attorney Lee be permitted to attend the deposition Mr. Paul purely as an "observer"; and (2) that Amphenol postpone the September 20, 2012 date for the depositions. As to the latter "caveat," Attorney Lee stated: "I should be able to get you dates that work for [Mr. Rock and Ms. Russell] on Tuesday or Wednesday. Thus, I would accept service on the premise that we will come up with a mutually convenient date (by no later than next week)." A true and correct copy of the August 31, 2012 email is attached hereto as Exhibit P.

20. On September 10, 2012, Attorney Lee sent counsel for Amphenol the following email message:

> The earliest day to depose both Kevin Rock and JR Russell is October 19. Mr. Rock is traveling extensively over the next month, including overseas trips, and Ms. Russell has several conflicts. On my voicemail I had discussed October 2, but that no longer works.[1] I called Nuala Droney, who I copied above, and she is available. She also advised that the parties plan to extend discovery into November, so I would think October 19 should work fine. Please let me know as soon as you can if this will work

1 Attorney Lee left me a voicemail message prior to sending this email in which he proposed October 2, 2012 as the date for the depositions. As reflected in the above email, the offer to take the depositions on October 2, 2012 was immediately withdrawn by Attorney Lee.

> so I can lock in these dates as their respective schedules change quickly.

A true and correct copy of the September 10, 2012 email is attached hereto as Exhibit Q.

21. On September 20, 2012, I sent Attorney Lee the following email message confirming that the Court had entered the amendment to the Stipulated Confidentiality Order: "Please see the below order from the Court granting the amendment to the stipulated protective order. Per our conversation earlier today, please confirm that Amphenol will receive TE's document production by the end of the week." A true and correct copy of the September 10, 2012 email is attached hereto as Exhibit R. Attorney Lee responded on September 11, 2012 with the following message: "I'm just confirming with client that they have (or will have) reviewed the documents by Thursday, and have told them my goal is to produce by week's end. I will let you know as soon as I can confirm for sure." *Id.*

22. On September 11, 2012, I responded to Attorney Lee with the following message:

> Given the deadlines in this case, it is very important that we receive TE's production by Friday. Over a month ago, you represented that you would "move this forward as expeditiously as possible" (see the attached email). You also represented via telephone that, once the amendment to the protective order was entered, TE's document production would be immediately forthcoming. We have been extraordinarily reasonable in accommodating TE's concerns, but can afford no further delays. We look forward to your confirmation that TE will produce documents on or before Friday, September 14.

A true and correct copy of the September 11, 2012 email is attached hereto as Exhibit S.

23. September 14, 2012 came and went with no further communications from Attorney Lee. On September 17, 2012, Attorney Lee forwarded an email attaching the cover letter to TE's document production. In the attached cover letter, TE details the very limited parameters it chose to use in its search for documents. Attorney Lee also stated the following:

> I need to confirm that October 19 still works on my witness schedule. Mr Rock is in France this week, so hopefully I will hear back tomorrow.

A true and correct copy of the September 17, 2012 email is attached hereto as Exhibit T.

24. On or about September 18, 2012, Amphenol finally received TE's production of documents. TE made its document production more than three months after the date commanded by the subpoena for production.

25. On September 20, 2012, Attorney Lee sent me an email attaching TE's privilege log for its production of documents. A true and correct copy of the September 20, 2012 email is attached hereto as Exhibit U.

26. On September 20, 2012, Attorney Beausoleil sent Attorney Lee a letter advising him that:

> The search parameters employed by TE in searching for and producing documents have impermissibly narrowed the scope of the documents produced in response to Amphenol's May 31, 2012 Subpoena *Duces Tecum* … . TE has had ample time to comply with the subpoena but has failed to do so. We hereby demand that TE fully and immediately come into compliance with its obligations under the subpoena.

To comply with the May 31 Subpoena, Amphenol demanded that TE search for and produce: (1) documents related to Paul's involvement with connector products; (2) documents related to Paul's communication with and solicitation of Amphenol's customers and distributors (including, but not limited to, Arrow, TTI, Avnet, and Bar-Tec); (3) responsive documents created after "mid-June, 2012" (TE limited its search to documents created through mid-June, notwithstanding the fact that TE made its production on September 17, 2012); and (4) responsive text messages sent to and/or received by Paul. Amphenol also stated that "TE used the [Stipulated Confidentiality] Order, as amended, to impermissibly designate documents that contain <u>no</u> trade secret or proprietary information." Accordingly, Amphenol demanded that TE

remove designations of "Confidential" and for "Attorneys' Eyes Only" from documents that do not contain proprietary or trade secret information. A true and correct copy of the September 20, 2012 letter is attached hereto as Exhibit V.

27. Frustrated with TE's chronic delays in producing documents and offering mutually-agreeable dates for the depositions of TE witnesses, and faced with pending discovery deadlines, TE served subpoenas on several TE employees that, based on the documents produced by TE, have knowledge or information relevant to Amphenol's claims against Paul. Amphenol served subpoenas upon the following TE witnesses for the following dates: Janet Russell – October 19; Kevin Rock – October 19; Frank Breslin – November 6; Charles Post, Esq. – November 7; David Gingerich – November 7; David Engler – November 8; and TE's Corporate Designee – November 8.

28. On September 21, 2012, I sent Attorney Lee an email advising him that Amphenol served subpoenas on the above-listed witnesses and advised that, "[a]s soon as we receive copies of the proofs of service from the process server, we will provide you with courtesy copies of the subpoenas." A true and correct copy of the September 21, 2012 email is attached hereto as Exhibit W, at 3. That same day, Attorney Lee responded with the following criticism:

> Why you wouldn't call me to discuss this issue in the last ten days rather than serving subpoenas upon my client is beyond me. If you had a problem with my request to attend the deposition, you could have picked up the phone and given me the option to accept service and then try to work out the issue of attending Mr. Paul's deposition.

*Id.* at 2. I responded to Attorney Lee with the following message:

> We served TE with a subpoena *duces tecum* on May 31, 2012, which commanded your client to produce documents on or before June 18, 2012. TE did not make its production until September 17, 2012 (a three month delay). Moreover, as stated in our September

> 20, 2012 letter, the production made by TE in response to the subpoena is deficient and the search done was impermissibly narrow.
>
> As a courtesy and so that you may decide whether to accept service, Amphenol then furnished you with copies of the subpoenas for Mr. Rock and Ms. Russell on August 29, 2012. Those subpoenas listed September 20 as the date for the depositions. Notwithstanding the date listed for deposition, you advised that "the earliest day to depose both Kevin Rock and JR Russell is October 19." And, you did not confirm their respective availability until September 19, 2012 - three weeks after we first provided you the subpoena.
>
> Please be advised that discovery in this case is set to close on November 16, 2012 (the November 16 date resulted from a one-month extension that was required, in part, because of TE's repeated delays in meeting its discovery obligations). We have tried to extend every possible courtesy to TE in this matter, but can afford no further delays.

*Id.* at 1-2.

FURTHER AFFIANT SAYETH NAUGHT.

James J. Halligan, Esq.

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, by James J. Halligan, Esq., who is personally known to me, who executed the foregoing in my presence and who did take an oath this 20th day of September, 2012.

Notary Public

My commission expires:

NOTARIAL SEAL
MARGARET M BILOTTA
Notary Public
PHILADELPHIA CTY, PHILADELPHIA CNTY
My Commission Expires Oct 25, 2013



DM1\3532192.1