```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

AMPHENOL CORPORATION,              :
   Plaintiff,                      :
                                   :
v.                                 :
                                   :          CIVIL NO: 3:12CV543(AVC)
RICHARD PAUL,                      :
   Defendant,                      :
                                   :
TE Connectivity, Ltd.,             :
   Defendant.                      :
```

## RULING ON THE PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

This is an action for damages and equitable relief in connection with the alleged breach of a non-competition agreement. It is brought pursuant to common law principles concerning breach of contract and equitable doctrines concerning the entry of restraining orders.

The plaintiff has filed the within motions seeking a preliminary injunction and a temporary restraining order as a means of enforcing the parties' agreements concerning non-competition. The issues are: 1) Whether the defendant has violated the terms of the parties' agreements; and 2) If so, does the level of his delict warrant the application of the relief sought.

The motions are granted in part.

1

**FACTS**

An examination of the pleadings, exhibits, memoranda, the attachments thereto and the testimony of various witnesses discloses the following:

The plaintiff, Amphenol Corporation ("Amphenol"), is a multi-national corporation dealing in a panoply of electronic, electrical, fiber optic and related products.[1] Amphenol has at least eighty-four divisions located throughout the world. The company's largest division, Amphenol's military aerospace operations ("Amphenol MAO"), is located in Sidney, New York. Amphenol MAO designs, manufactures, and supplies interconnect systems for the military and aerospace markets.

The defendant, Richard Paul, is a former decades-long employee of Amphenol MAO. Within the current year, Paul acted as the business unit director of Amphenol's high speed interconnect unit. He appears to have an expertise with respect to connectors.[2] At Amphenol, Paul was responsible for various aspects of the business including sales, pricing, marketing and

---

[1] Amphenol, manufactures and markets electrical, electronic and fiber optic connectors, coaxial and flat-ribbon cable, and interconnect systems. The primary markets for Amphenol's products are communications and information processing markets, including cable television, cellular telephone and data communication processing systems; aerospace and military electronics; and automotive, rail and other transportation and industrial applications.

[2] A connector is a device that joins electrical circuits together.

engineering. Paul's primary duties involved product development and expanding Amphenol's operations, with respect to connectors, into other markets. Paul had unlimited access to information at Amphenol, specifically marketing information regarding sales history, markets and customers.

The defendant, TE Connectivity, Ltd. ("TE"), designs and manufactures products that connect and protect data and power. The company serves customers in more than 150 countries in a variety of industries including automotive, data communication systems, consumer electronics, telecommunications, aerospace, defense and marine, medical, energy and lighting. Within the past year, TE merged with Deutsch Group ("Deutsch"), a manufacturer of electrical and fiber optic connectors.

Prior to TE's merger with Deutsch, Amphenol and TE were not considered direct competitors. Deutsch, however, has a product and consumer base that parallels Amphenol's. Thus, TE's merger with Deutsch placed TE in direct competition with Amphenol. Amphenol was aware of this fact, and when it learned of TE's merger with Deutsch, the company created a team to formulate a strategic response to the merger. Paul had access to the merger response team's findings and documents during his employment with Amphenol.

Over the years, Paul and Amphenol executed various non-competition agreements ("the Agreements").[3] The Agreements provided, *inter alia*, that:

> So long as [Paul] is employed by [Amphenol] . . . and for a period of one year thereafter . . . [Paul] shall not, in any geographic region in the world in which [Paul] acts or has acted for [Amphenol] or any division or subsidiary thereof, directly or indirectly, engage in the development, production, sale or distribution of any product, sold, distributed or which is in development (i) by the operation of [Ampehnol] . . . during the twelve month period immediately preceding [Paul's] termination of employment, or (ii) by [Amphenol] or its subsidiaries about which [Paul received and Confidential Information.[4]

The Agreements further provided that Amphenol may extend the non-competition period for an additional twelve months if Amphenol gives notice to Paul within nine months of his termination and pays Paul 50% of his annual base salary. Additionally, the Agreements restrict Paul's ability to divert customers or employees away from Amphenol for a period of twenty-four months following the termination of his employment.

---

[3] On November 2, 2006, Paul and Amphenol executed an Intellectual Property Agreement. In addition, Paul and Amphenol entered into a 2000 Management Stockholder's Agreement and a 2009 Management Stockholder's Agreement. At this stage of the proceedings, the court does not address the enforceability of the Agreements with respect to duration or scope.

[4] E.g., Exibit C ¶ 17.

On March 9, 2012, Paul voluntarily terminated his employment with Amphenol MAO in order to join TE as global vice president for product management and pricing for TE's aerospace, defense and marine business unit. Paul is responsible for the marketing of wires and cables, relays and contactors, and engineered polymer solutions. The aerospace, defense and marine business unit that Paul oversees is separate and distinct from other TE or Deutsch divisions that are in competition with Amphenol. In addition, Paul works from home and does not have direct physical contact with any TE or Deutsch employee that deals with connectors. However, Paul has been copied on various emails related to TE's merger with Deutsch and the pricing and marketing of connectors.

Amphenol has completed a forensic study of Paul's computer activity in the time before his departure. The study found that 2,000 work-related emails were forwarded to Paul's personal email address. In addition, a review of the computer hard drives that Paul returned to Amphenol revealed that he had removed various files from Amphenol, the majority of which have business relevance.

### **STANDARD**

To merit imposition of a preliminary injunction, the moving party "must demonstrate (1) that it will be irreparably harmed

in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).

## DISCUSSION

At this stage of the proceedings it does not appear that Paul is competing with his former employer. Accordingly, Paul may continue in his current capacity as the global vice president for product management and pricing for TE's aerospace, defense and marine business unit. There are, however, certain indicia that, upon further development, may lead to the conclusion that Paul is indeed competing with Amphenol, and therefore, acting in violation of the Agreements. For example, Paul's possession of proprietary documents belonging to Amphenol (which he has returned) provides the possibility that the documents could be used in a manner that violates the Agreements. Additionally, the fact that Paul was included on internal emails related to TE's merger with Deutsch, and the pricing and sale of connectors, indicates that TE is not taking adequate measures to insulate Paul from activities that may violate the Agreements. To help ensure that violations of the

6

Agreements do not occur in the future, the court orders the following:

1. Until March 9, 2013,[5] Paul shall have no involvement and/or offer or be asked for any input regarding or relating to the Deutsch acquisition by and/or integration into TE and the post-merger operations of Deutsch;

2. Paul shall not use Amphenol's confidential information (as defined in the IPA and Stockholder's Agreements) or trade secrets, including confidential business and sales information, pricing structures, customer and product information, customer preferences, information from the POS Pivot database and other confidential and trade secret information;

3. Paul shall not use or disclose Amphenol's confidential information (as defined in the IPA and Stockholder's Agreements) and/or trade secrets to solicit and/or divert Amphenol's customers;

4. Paul shall not profit and/or capitalize, directly or indirectly, by using Amphenol's confidential information and/or trade secrets to solicit, communicate with, and/or divert Amphenol's existing and/or potential customers;

---

[5] The court acknowledges that pursuant to the Agreements, Amphenol has the right to extend this period for an additional year.

5. Up to and including March 9, 2013, Paul shall not contact any employee, or former employee employed by Amphenol at any time in the one year prior to March 9, 2012, for the purpose of or with the intent of soliciting, diverting, or otherwise enticing such employee away from or out of the employ of Amphenol;

6. Paul shall not contact any person or entity which was, at the time of Paul's resignation from Amphenol, or which has been, within one year prior to the time of his resignation, a customer, supplier, customer-representative, or distributor of/for Amphenol for the purpose of communicating with, soliciting, diverting, and/or otherwise selling products or services in competition with Amphenol;

7. Paul shall not use or disclose any knowledge, confidential information (as defined in the IPA and Stockholder's Agreements) or trade secrets concerning or belonging to Amphenol and/or its Military and Aerospace Operations; and

8. Up to and including Until March 9, 2013, Paul shall not have responsibilities for connectors or interconnectors of any kind.

It is further ordered that Paul shall cooperate with TE in TE's implementation of the following precautions to confirm that Paul has not and will not share Amphenol confidential, trade secret, or proprietary information with TE:

1. TE's distribution of a written memorandum reminding senior leaders and managers of TE that Paul is to have no involvement with Deutsch and/or connectors;

2. TE's designation of an information technology professional employed by TE to search TE's systems for any evidence that Paul has uploaded any Amphenol documents or Amphenol data to TE's computers, servers, and hard drives, and to certify that these searches were performed by 14 days from this Court's order, and every 30 days thereafter;

3. TE's implementation of a word-based filter including the term "Amphenol" and "Deutsch" on Paul's email accounts on a network level so that Paul remains "fire walled" from any competitive activities and/or communications, such filter to be implemented up to and including March 9, 2014; and

4. When Paul works from the TE Middleton Facility, he will conduct his work in the ITAR secure and limited access facility.

Within seven calendar days of this order, Paul and TE shall meet and confirm that Paul is in full compliance of this order. A written certification stating as such shall be provided to Amphenol and this court within fourteen days.

## **CONCLUSION**

For the foregoing reasons, the motion for preliminary injunction and the motion for temporary restraining order are GRANTED IN PART.

It is so ordered, this 9th day of November 2012, at Hartford, Connecticut.

                                                                                                /s/  
                                            Alfred V. Covello, U.S.D.J.